IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Melissa Vaughn, | : | |
| | : | Case No. 1:21-cv-291 |
| Plaintiff, | : | |
| | : | Judge Susan J. Dlott |
| v. | : | |
| | : | Order on Cross-Motions for Summary |
| EquityExperts.org, Midwest, LLC, *et al.*, | : | Judgment and Motion to Strike |
| | : | |
| Defendants. | : | |

In this case, Plaintiff Melissa Vaughn alleges that Defendant EquityExperts.org Midwest LLC ("EE Midwest") violated the Fair Debt Collections Practices Act ("FDCPA") in the manner by which it tried to collect a debt that Vaughn owed to her condominium's homeowner's association. Vaughn and EE Midwest have filed cross-Motions for Summary Judgment. (Docs. 41, 42–43.)[1] Vaughn also has filed a Motion to Strike a declaration and an exhibit supporting EE Midwest's Motion for Summary Judgment. (Doc. 46.) For the reasons that follow, the Court will **GRANT IN PART AND DENY IN PART** Vaughn's Motion to Strike; **DENY** Vaughn's Motion for Summary Judgment; and **GRANT** EE Midwest's Motion for Summary Judgment.

I.     **BACKGROUND**

A.     **Factual History**

The facts herein have been agreed to by the parties except where noted otherwise. (Docs. 48-1, 55-1.)

    1.     **Vaughn's Obligations to the Condo Association**

Vaughn owned a condominium in a community governed by the Jamestown Village Condominium Owner's Association, Inc. ("Condo Association"). Membership in the Condo

---

[1] EE Midwest filed its Motion for Summary Judgment and its Memorandum in Support as separate docket entries.

Association ran with the land and ceased upon sale or disposal of property located in the Condo Association. Vaughn's use and enjoyment of her property was subject to a recorded Declaration of Covenants, Conditions and Restrictions of the Association ("Covenants") and accompanying Bylaws which are jointly referred to as the Governing Documents.

The Governing Documents required Vaughn to pay the Association's monthly assessments, including expenses and reasonable attorney fees related to any past-due assessments. There was a continuing charge and lien upon all lots for any past-due assessments or other charges, including interest, expenses, late charges, and reasonable attorney fees. The Covenants provided that the annual assessments together with associated collection levied against the lot was a personal obligation for the owner that survived any sale or transfer of the lot. The Covenants similarly provided that in addition to past due assessments, a member was liable for "interest thereon, late charges, expenses and reasonable attorney fees involved in the collection thereof." (Doc. 13-3 at PageID 151.) Vaughn's monthly assessments were approximately $266.00.

When the Condo Association was unable to collect Vaughn's past due assessments, it referred her account for collection to EE Midwest. At the time of referral, Vaughn's opening principal balance was $1,239.56, which meant that she had not paid the Condo Association in nearly six months. As of April 25, 2023, Vaughn had not paid the balance of her dues owed to the Condo Association. (Doc. 42-2 at PageID 635.) In fact, she made only one payment of $266.14 on October 2, 2020 after collection activities had been commenced. (Doc. 40-2 at PageID 490.)

    2.    **EE Midwest**

The Condo Association entered into a Collection Agreement dated October 1, 2019 with

EE Midwest. (Doc. 40-6 at PageID 522.) EE Midwest is one of a number of entities—sharing a common owner—utilizing names including the term "EquityExperts.org." (Doc. 54-4 at PageID 865.) The primary entity is called EquityExperts.org LLC. (*Id.*) The other entities use geographic monikers reflecting the areas in which they do business, such as EE Midwest and EquityExperts.org California LLC. (*Id.*)

The 2019 Collection Agreement authorized EE Midwest, as the identified Collection Agent, to collect unpaid dues owed to the Condo Association:

> Association is owed assessments, together with other fees and costs, which may be secured by their interest in the Unit. Association and Collection Agent agree that for any unit address referred to collection, Collection Agent will attempt to collect all amounts due and all amounts that become due, including the fees and cost incurred to collect on any account until the full balance is paid . . . .

(Doc. 40-6 at PageID 522.) The 2019 Collection Agreement was signed by an agent of the Condo Association and Michael Novak, who is identified on signature block as the President of EquityExperts.org California, LLC. (*Id.* at PageID 525.)[2]

The 2019 Collection Agreement at ¶ 13 gave EE Midwest the right to "update this agreement" including "the attached [fee] schedules." (*Id.* at PageID 524.) It further provided that changes "become effective within (30) days and no additional signature will be required[,]" but if "[Condo] Association notifies Collection Agent within (30) days that they do not accept the changes, the Agreement will be terminated." (*Id.*) The 2019 Collection Agreement included an attached Collections Fee Schedule. (*Id.* at PageID 526.) The parties updated the 2019 Agreement one time when EE Midwest provided the Condo Association with a 2020 Fee Schedule. (Doc. 42-1 at PageID 572; Doc. 51 at PageID 829; Doc. 51-1 at PageID 835.) The

---

[2] When asked about the discrepancy between EE Midwest as the party named in the 2019 Collection Agreement, and EQUITYEXPERTS.ORG CALIFORNIA, LLC being the signatory on the document, EE Midwest's corporate representative testified that she assumed the company account manager "accidently swamped [*sic*] the wrong signature block." (Doc. 39-1 at PageID 400.)

Condo Association did not object to the 2020 Fee Schedule. (Doc. 42-1 at PageID 572.)

The 2020 Fee Schedule included the following introductory provision:

> Association authorizes Equity Experts to charge the fee(s) listed in Schedule A and Schedule B, below, together with all costs advanced or incurred by Equity Experts to Association who will add these amounts to the account of the delinquent Unit and to the Unit Owner(s). Interest may accrue on all unpaid fees below, up to the maximum statutory rate.

(Doc. 51-1 at PageID 835 (italics removed).) This was consistent with the 2019 Collection Agreement which stated at ¶ 2 that "Association will add the fees and costs charged to Association to the debtor's accounts." (Doc. 40-6 at PageID 522.) The Condo Association was liable for costs of collections if EE Midwest was unable to collect the balance from the debtor. (*Id.* at PageID 570.)

### 3. Debt Collection of Vaughn's Debt to the Condo Association

The Condo Association placed Vaughn's account with EE Midwest for collection in June 2020. (*Id.* at PageID 572.) The 2020 Fee Schedule was in effect at this time. (*Id.*) Vaughn's principle starting balance was $1,239.56. The first fee incurred on the account for collection was the "Set-up Compliance Package" fee of $270 as stated on the 2020 Fee Schedule. (*Id.* at PageID 572; Doc. 51-1 at PageID 835.) A collection letter was sent to Vaughn on June 26, 2020 as part of this compliance package. (Doc. 40-7 at PageID 528.) The letter stated that Vaughn's unpaid balance was $1,509.56, which included both the Condo Association dues and fees incurred in collection. (*Id.*) It also included a notice that "new assessments, fees, and the costs of collection may continue to be added and the amount of your debut may continue to increase" until Vaughn paid the balance in full. (*Id.*)

At least five additional collection letters were sent to Vaughn between August 6, 2020 and November 19, 2020 to try to collect the debt. (*Id.* at PageID 529–533.) The balance due increased from $2,066.84 on August 6, 2020 to $4,336.98 on November 19, 2020 with the

accumulation of additional Condo Association dues and the collection fees incurred under the 2020 Fee Schedule. (*Id.*; Doc. 40-2 at PageID 489–491.) Some of the collection letters explicitly informed Vaughn that additional collection costs would be charged to the Condo Association and added to the amount Vaughn owed. (Doc. 40-7 at PageID 529–533.) After November 19, 2020, Vaughn received additional letters, one per month through June 2021, informing her that she owed a debt to the Condo Association and that fees and collection costs could continue to be added to her balance. (Doc. 42-1 at PageID 581–588.)

The collection letters sent to Vaughn identified the collection agency as "EquityExperts.org LLC" and not as EE Midwest. (*Id.*) Galofaro acknowledged in her Second Declaration that an employee must have made an error when setting up the Condo Association in EquityExperts.org's recording keeping system. (Doc. 54-4 at PageID 867.) The staff member should have entered EEM for EE Midwest for the Condo Association account but failed to do so. (*Id.* at PageID 867–870.)

    4.    **Vaughn Filed for Bankruptcy**

Vaughn filed for Chapter 13 bankruptcy relief on May 9, 2023 in the Southern District of Ohio, Case No. 1:23-bk-10885. (Doc. 49-1 at PageID 765.) She failed to disclose this suit in the bankruptcy proceedings as a claim against a third party or as a pending lawsuit in either the Initial Petition or the Amended Schedule filed on August 2, 2023. (*Id.* at PageID 778, 797; Doc. 66-1 at PageID 1025.) She did list the Condo Association as a secured creditor. (Doc. 49-1 at PageID 782.) The Bankruptcy Court confirmed her Chapter 13 Plan on August 17, 2023. (Doc. 66-1 at PageID 1026.) She did not disclose this lawsuit in the bankruptcy suit until September 9, 2023, only after her omission was revealed in this FDCPA case. (Doc. 62-1 at PageID 991.)

B.   **Procedural Posture of this Case**

Vaughn initiated this action against EE Midwest, Michael Novak, Gar Liebler, and the Condo Association on April 23, 2021. (Doc. 1.) She filed a First Amended Complaint on September 7, 2021. (Doc. 12.) Defendants then filed a Supplemental Motion to Dismiss. (Doc. 13.) Following the issuance of a Report and Recommendation by Magistrate Judge Stephanie K. Bowman, which the Court adopted, only Vaughn's FDCPA claims against EE Midwest remained. (Docs. 17, 18.)

Vaughn alleged in the First Amended Complaint that EE Midwest violated FDCPA as follows:

> a. 15 U.S.C. §1692e which prohibits a debt collector from engaging in any conduct the natural consequences of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Defendant's unconscionably and unreasonably high fees and the machine gun rate at which they assessed them to the Plaintiff has harassed, oppressed and abused her while the defendants have attempted to collect the paltry HOA debt from her.
>
> b. 15 U.S.C. §1692e which prohibits a debt collector from using any false, deceptive or misleading representations or means in connection with the collection of a debt. Defendants violated this provision of the FDCPA by misrepresenting to Plaintiff that she owed the fees that EE had unilaterally assessed and that she was liable for these charges. These charges were unreasonable and had no basis in fact or law.
>
> c. 15 U.S.C. §1692f which prohibits a debt collector from use unfair or unconscionable means to collect or attempt to collect any debt. Defendant's unconsionably and unreasonably high fees and the machine gun rate at which they assessed them to the Plaintiff has harassed, oppressed and abused her while the defendants have attempted to collect the paltry HOA debt from her.

(Doc. 12 at PageID 80–81.) Similarly, in her Responses to Interrogatories signed on April 25, 2023, Vaughn identified two ways in which EE Midwest violated the FDCPA: (1) EE Midwest violated 15 U.S.C. § 1692e "by misrepresenting to Plaintiff that she owed the fees that EE had unilaterally assessed and that she was liable for these charges[;]" and (2) EE Midwest violated 15 U.S.C. § 1692f by assessing "unconscionably and unreasonably high fees" at a "machine gun

6

rate" while collecting a "paltry HOA debt." (Doc. 42-2 at PageID 593.)

Following a period of discovery, both Vaughn and EE Midwest filed Motions for Summary Judgment. (Docs. 41, 42–43.) The Motions for Summary Judgment are fully briefed, including the filing of supplemental briefs on the issue of judicial estoppel. EE Midwest requested oral argument, but the Court finds that it is not necessary to resolve the pending motions. (Doc. 63.) Vaughn did not offer evidence or argument in her summary judgment briefs in support of her claim that EE Midwest violated 15 U.S.C. § 1692f. (Docs. 41, 48, 60.) The Court considers the § 1692f claim to be abandoned.

EE Midwest filed the initial Declaration of Jacqueline Galofaro with attached exhibits in support of summary judgment. (Doc. 42-1.) Vaughn then filed a Motion to Strike the Galofaro Declaration and a Fee Schedule exhibit attached to it. (Doc. 46.) The Motion to Strike also is fully briefed.

## II.    VAUGHN'S MOTION TO STRIKE

Vaughn moves to strike the Declaration of Jacqueline Galofaro and an exhibit marked as Exhibit 1A to the Declaration which purports to be a Fee Schedule for Equity Experts. (Doc. 42-1 at 568–574; *Id.* at PageID 575.) Vaughn contends that EE Midwest did not produce the Fee Schedule in discovery and that it is the not the same document as the Fee Schedules about which Galofaro testified at her Rule 30(b)(6) deposition. The Fee Schedule filed at Doc. 42-1 at PageID 575 is Bates-stamped to reference a different case called Clay.

Galofaro identified at the Rule 30(b)(6) deposition both the 2019 Fee Schedule, marked as Exhibit 2, and the updated 2020 Fee Schedule, marked as Exhibit 12. (Doc. 39-1 at PageID 435–437.) EE Midwest conceded that its attorney made a clerical error by filing an incorrect version of a 2020 Fee Schedule at Doc. 42-1 at PageID 575 in connection with Galofaro's

7

Declaration. (Doc. 51 at PageID 829.) That is, it conceded that the Fee Schedule filed at Doc. 42-1 is not relevant to this case. However, EE Midwest later filed the correct 2020 Fee Schedule on September 7, 2023. (Doc. 51-1 at PageID 829, 835.) The 2020 Fee Schedule now filed at Doc. 51-1 is the same document identified as Exhibit 12 and discussed by Galofaro at her Rule 30(b)(6) Deposition. (*Id.* at PageID 829; Doc. 39-1 at PageID 436, 469.) It is marked as having been produced in this case on December 15, 2022. (Doc. 51-1 at PageID 835.)

The Court will strike the Fee Schedule filed at Doc. 42-1 at PageID 575 that EE Midwest concedes is not relevant to this case. However, the Court will not strike Galofaro's Declaration. The correct 2020 Fee Schedule was produced in discovery, discussed by Galofaro at her deposition, and is filed in the electronic record. The Motion to Strike is granted in part as to the Fee Schedule filed at Doc. 42-1 but denied in part as to Galofaro's Declaration.

### III. STANDARDS GOVERNING MOTIONS FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden to show that no genuine issues of material fact are in dispute. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–587 (1986); *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 811 (6th Cir. 2011). The movant may support a motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–324 (1986). In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257

(1986). "Where the parties have filed cross-motions for summary judgment, the court must consider each motion separately on its merits, since each party, as a movant for summary judgment, bears the burden to establish both the nonexistence of genuine issues of material fact and that party's entitlement to judgment as a matter of law." *In re Morgeson,* 371 B.R. 798, 800–801 (B.A.P. 6th Cir. 2007).

**IV.  ANALYSIS OF SUMMARY JUDGMENT MOTIONS**

Vaughn has moved for summary judgment on the merits of her FDCPA claims. Likewise, EE Midwest initially moved for summary judgment only on the merits of the FDCPA claims, but it now also moves summary judgment on the grounds of judicial estoppel.  For the reasons that follow, the Court concludes that Vaughn is judicially estopped from pursuing the FDCPA claims against EE Midwest.  Accordingly, the Court need not reach the merits of the FDCPA claims.

EE Midwest moves for summary judgment on the basis of judicial estoppel because Vaughn did not timely disclose the existence of this lawsuit to the bankruptcy court in Case No. 1:23-bk-10885 (S.D. Ohio).  "The Bankruptcy Code requires debtors to disclose all assets, including a potential cause of action." *Cooper v. Gucci Am., Inc.*, No. 3:19-CV-735-DJH-LLK, 2020 WL 4604498, at *3 (W.D. Ky. Aug. 11, 2020) (internal quotation and citation omitted).  "If a debtor fails to disclose during her bankruptcy proceedings that she has a potential civil claim against a third party, she may be estopped from later filing that claim." *Id.* (cleaned up).  Thus, in the bankruptcy context, "judicial estoppel bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position either as a preliminary matter or as part of a final disposition." *Assasepa v. JPMorgan Chase Bank*, No. 1:11-cv-156, 2012 WL 88162, at *23

(S.D. Ohio Jan. 11, 2012) (cleaned up). The magistrate judge in *Assasepa* recommended that the district court judicially estop a plaintiff from pursuing her consumer rights claims because she initially failed to disclose the civil case in the concurrently-filed bankruptcy suit. *Id.* at *12–16.[3]

Like in *Assasepa*, both factors for judicial estoppel are met here. First, Vaughn took a position contrary to her claims here in this case when she failed to disclose this litigation to the bankruptcy court. This litigation had been pending for more than two years when Vaughn filed a Bankruptcy Petition on May 9, 2023, participated in a meeting of creditors on July 19, 2023, and filed an Amended Schedule on August 2, 2023 without disclosing this suit. (Doc. 66-1 at PageID 1024–1025.) She disclosed to the bankruptcy court other lawsuits in which she was a defendant, but not this action in which she is the plaintiff. (Doc. 49-1 at PageID 778, 797.) It is not plausible that Vaughn's non-disclosure of this lawsuit was inadvertent or the result of forgetfulness. Vaughn was represented by different legal counsel in both suits. She was actively participating in this litigation—submitting discovery responses in April 2023 and a sworn Declaration in July 2023—at the same time she sought bankruptcy protection. (Docs. 40-1, 42-2.) She did not disclose this litigation to the bankruptcy court until the issue was raised by EE Midwest in the summary judgment briefing here.

Second, the bankruptcy court acted in reliance on Vaughn's non-disclosure of this litigation. The bankruptcy court held a meeting of creditors on July 19, 2023 and confirmed the Chapter 13 plan on August 17, 2023, both before Vaughn disclosed this litigation to the bankruptcy court on September 9, 2023. (Doc. 66-1 at PageID 1024–1025.) The magistrate judge in *Assasepa* explained how these types of preliminary actions demonstrate that a bankruptcy court has adopted a debtor's position that other litigation did not exist:

---

[3] The plaintiff in *Assasepo* voluntarily dismissed the case after receiving the Report and Recommendation. No. 1:11-cv-156, Dkt. 23 (S.D. Ohio Jan. 30, 2012).

> Lastly, plaintiff's unsupported argument that judicial estoppel applies only in cases where the bankruptcy is closed is without merit. Pursuant to filing for bankruptcy, Ms. Assasepa received immediate benefits. Creditors and other parties were precluded from collecting debts or taking other action against her. Relying on Ms. Assasepa's incomplete statements, the bankruptcy court assigned her a trustee, oversaw a payment plan, and convened several creditors' meetings all for Ms. Assasepa's benefit and all before she disclosed this lawsuit as an asset. It is not necessary that Ms. Assasepa's bankruptcy case be discharged (closed) for the judicial estoppel doctrine to apply. Where, as here, a bankruptcy petitioner has received "significant financial benefits," such as being free of debt-collectors and entering a payment plan designed to relieve debts, judicial estoppel is appropriate.

2012 WL 88162 at *15.

Because both factors for judicial estoppel are satisfied, the Court finds that Vaughn is judicially estopped from proceeding with these FDCPA claims against EE Midwest.

## V. CONCLUSION

For the foregoing reasons, the Court **ORDERS** as follows:

- Vaughn's Motion to Strike (Doc. 46) is **GRANTED IN PART** as to the Fee Schedule filed at Doc. 42-1 at PageID 575 but **DENIED IN PART** as to the Galofaro Declaration;

- Vaughn's Motion for Summary Judgment (Doc. 41) is **DENIED**; and

- EE Midwest's Motion for Summary Judgment (Docs. 42–43) is **GRANTED**.

**IT IS SO ORDERED.**

                                                        BY THE COURT:

                                                        S/Susan J. Dlott
                                                        Susan J. Dlott
                                                        United States District Judge